UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:07cv116

| | |
|---|---|
| JANICE COLLINS, )<br>           Plaintiff. )<br>)<br>v. )<br>)<br>CHEMICAL COATINGS, INC. )<br>and TIMOTHY HARWOOD, )<br>          Defendants. )<br>_____ ) | **ORDER** |

**THIS MATTER** is before the court on Defendant Timothy Harwood's ("Harwood") Motion for Summary Judgment and Memorandum in Support (Documents #27, 28) and Defendant Chemical Coatings, Inc.'s ("CCI") Motion for Summary Judgment and Memorandum in Support (Documents #29, 30), all filed December 1, 2008. In response to these motions, Plaintiff Janice Collins[1] ("Collins") filed a personal Affidavit in Opposition to Summary Judgment (Document #38) on December 18, 2008. Both Defendants filed Replies to this Affidavit (Documents #39, 40) on December 30, 2008. On January 2, 2009, Defendant CCI filed an amended Reply (Document #42). The Defendants support their Motions for Summary Judgment with extensive exhibits that include deposition excerpts, affidavits, and the like. These matters are ripe for disposition.

**FACTUAL AND PROCEDURAL BACKGROUND**

CCI is a manufacturer and distributer of industrial coatings. From 2001 until her resignation on July 27, 2006, Collins worked as a packer in CCI's Distribution Center located in Hudson, North

---

[1] Collins has since married and adopted "Russ" as her last name. However, all parties in this case – including Collins – continue to refer to Plaintiff as "Collins" in their filings. This court will do the same.

1

Carolina. At all times relevant to the instant case, Harwood was the Distribution Center Manager and Collins's direct supervisor.

Two lead persons were also assigned to the Distribution Center. These employees received an hourly wage and were responsible for directing work flow in the distribution center. (Acocella Decl. ¶ 3; Collins Dep. at 45.) Lead persons were not authorized to hire or discharge other employees, grant pay raises, promote or demote employees, discipline employees, or issue performance reviews. (Acocella Decl. ¶ 3; Green Decl. ¶ 13.) For this reason, CCI did not classify the lead person job as a management or supervisory position. (Green Decl. ¶ 13.)

Throughout Collins's period of employment, CCI had a "Non-Harassment" policy in place. This Non-Harassment policy defined sexual harassment and directed employees to report promptly any instances of harassment. The policy stated that harassment should be reported to the employee's immediate supervisor or to the employee relations representative. The policy also allowed harassment to be reported to any other supervisor, manager, or officer if the employee felt that this would be more appropriate or more comfortable, "such as where the alleged harasser is [the employee's] immediate supervisor." (Collins Dep. Exh. 6.) In addition, the policy promises that all claims will be investigated and prohibits retaliation. Collins has acknowledged that she received a copy of the policy at the time her employment began and that she signed another document pledging to familiarize herself with the policy's contents.

Employee dissatisfaction at the CCI Distribution Center ran high in the six months prior to Collins's resignation, as employees were frequently required to work mandatory overtime with little or no advance notice. (Collins Dep. 365-66; Wedrychowicz Decl. ¶ 8). During this time, a number of Distribution Center employees resigned, citing various reasons. At their depositions, some of these employees testified that they were motivated to quit due in part to Harwood's abrasive

2

management style, but this information was not communicated to CCI at the time the employees left the company. Collins's own decision to quit was precipitated by a co-worker's announcement that he was walking off of the job and quitting rather than working forced overtime. Collins told her coworker as he exited, "I'm leaving right behind you." (Collins Dep. 112.) True to her word, Collins did not return to work after lunch.

After walking off of the job, Collins returned to the Distribution Center late in the same day and visited Employee Relations Manager Cheryl Green to discuss her reasons for leaving. At this meeting, Collins stated that she had resigned because of Harwood and wanted to bring a claim of sexual harassment against him. (Collins Dep. 115-20.) Green then scheduled a meeting for the following day with Collins and the company Vice President of Operations Gordon Hyde to further discuss Collins's complaints. Green also asked Collins to prepare a written list of specific grievances.

At the meeting the next morning, Collins's complaints were as follows: Harwood cursed at her and at other employees, Harwood told Collins that a groin injury she had suffered was "not his damn problem," Harwood told Collins "about going to Night Secrets store and buying his self [sic] a pump for males," Harwood stated he "bought pills to make him have sex for four hours," Harwood talked about his sex life with his girlfriend on at least one occasion, Harwood told Collins that he would "be with [her] when things settled down between him and his former wife," Harwood put his arm around female employees when speaking to them, Harwood generally "talked down" to employees, and Collins believed that Harwood used illegal drugs.[2] (Collins Dep. 120-21, 404-05, Exh. 35; Green Decl. ¶ 33-35, 37.) When Hyde and Green inquired why Collins had never brought

---

[2]Collins also reported some other lesser irritants in the work environment that cannot be characterized as sexual harassment and that do not aid the Court's analysis.

3

these issues to their attention in the past, Collins stated that she was afraid of losing her job.[3] At the conclusion of the meeting, Hyde told Collins that her claims would be investigated.

Thereafter, CCI interviewed the employees under Harwood's supervision. This investigation led to a determination "that some of the employee interviews substantiated Collins's complaint regarding use of inappropriate language and other improper management behavior that was, for the most part, not sexual in nature, but certainly unprofessional." (Document #30 at 10.) When confronted with these allegations, Harwood denied them. When told that he was being transferred to a different position, Harwood resigned.

In September 2006, CCI sent Collins a letter informing her that Harwood had been replaced and offering unconditional re-employment. Collins telephoned Green and expressed interest in returning to her old job. Green indicated that CCI would be happy to rehire her after a physical examination and drug screen, which were required of all newly hired and rehired personnel. Green scheduled an appointment for Collins to undergo the exam and drug screen, and Collins indicated she would be there. However, Collins did not show at the designated time. Green made one further attempt to contact Collins by letter, but this effort was unsuccessful and Collins never returned to work with CCI.

In Collins's complaint, deposition testimony, and affidavit in opposition to summary judgment, Collins contends that she was subjected to additional harassment at the hands of Harwood that she did not mention in her meeting with Green and Hyde. These further allegations are that (1) Harwood told Collins she had a "nice butt," (2) Harwood asked Collins whether her breasts were

---

[3]Collins explained that she did not feel she could speak to Director of Manufacturing Sam Hinson because she had heard Harwood say that he and Hinson played golf together. Collins gave no basis for her belief that her job would be in jeopardy if she complained to Green, Hyde, or plant manager Thomas Wedrychowicz.

"fake or real," (3) Harwood informed Collins that he had bought sex pills and a penis pump and asked her to come to his house, (4) Harwood boasted that he had a "big cock," (5) Harwood opined that he could satisfy Collins like no other man, and (6) Harwood told Collins that if she got under his desk and gave him a raise then she might be eligible for a raise. (Collins Aff. ¶ 10.) In her affidavit, Collins also states for the first time that she reported these incidents of harassment to plant manager Wedrychowicz but that no action was taken. However, this assertion is contradicted by Collins's earlier statements and deposition testimony. In her deposition testimony, Collins describes making general complaints about her job to Wedrychowicz and requesting a transfer, but the substance of these complaints did not put Wedrychowicz on notice of any harassing behavior. (Collins Dep. 128-32.) Similarly, Collins did not aver in her EEOC report that she had reported Harwood's alleged harassing behavior to Wedrychowicz.

On the other hand, Collins has consistently maintained that she reported Harwood's harassment to one of the factory lead persons, Angela Acocella. However, Collins's comments to Acocella also only indicated general dissatisfaction, not harassment. For instance, Collins complained that she was "tired of being talked down to" and "treated like I was nothing." After Acocella said she could not do anything for fear of losing her job, Collins did not go into further details. (Collins Dep. 189-90.)

Collins asserts that Harwood's behavior has caused her medical and emotional problems, including "insomnia, fear, chronic depression, chronic anxiety, and stress." (Collins Aff. ¶ 17.) However, Collins was being treated for depression, stress, and anxiety for many years before the alleged start of Harwood's complained of behavior. (Collins Dep. 334-37.) Furthermore, treatment records from the months prior to her resignation indicate that Collins condition was actually improving at this time. (Collins Dep. 326-30.) During the first half of 2006, Collins was not

diagnosed with any renewed or aggravated depression. Instead, Collins's only medical evidence of mental or emotional distress[4] was her treatment for mild anxiety. However, this treatment was consistent with Collins's prior medical history, and Collins has not provided evidence showing that this treatment was related to any problems at work. After her resignation, Collins did not visit her primary care physician until more than eight months had elapsed, and she was never diagnosed with severe emotional distress or any similar condition by any of her treating physicians. In her affidavit opposing summary judgment, Collins does not link her claimed medical and emotional problems to any record evidence of a medical diagnosis or medical treatment that would support her assertions.

## STANDARD OF REVIEW

Summary judgment is proper where "the facts and the law will reasonably support only one conclusion." Hawkins v. PepsiCo, Inc., 203 F.3d 274, 279 (4th Cir. 2000) (quotation omitted). In determining whether this is the case, a court should examine "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any" to decide if "there is no genuine issue of material fact" such that "the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242 (1986); Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In considering a

---

[4]During this time, Collins was treated for a host of other physical ailments, including heart disease and skin cancer. Collins does not allege, nor could she plausibly contend, that these physical illnesses are relevant to her claims of emotional distress. It may be, however, that they could have affected her general state of mind.

motion for summary judgment, the court is required to view the facts and inferences in the light most favorable to the party opposing the motion. Anderson, 477 U.S. at 255; Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). However, the party opposing summary judgment "may not rest upon the mere allegations or denials of [her] pleadings," FED. R. CIV. P. 56(e), and a "mere scintilla of evidence" is insufficient to overcome summary judgment. Anderson, 477 U.S. at 249-50. Instead, the party opposing summary judgment must "set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). A genuine issue for trial does not exist where "the adverse party fails to bring forth facts showing that 'reasonable minds could differ' on a material point." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003) (citing Anderson, 477 U.S. at 250). "[N]either unsupported speculation, nor evidence that is merely colorable or not significantly probative, will suffice to defeat a motion for summary judgment." Id. (citations and quotations omitted). Furthermore, "the plaintiff's naked opinion, without more, is not enough to establish . . . discrimination." Yarnevic v. Brink's, Inc., 102 F.3d 753, 757 (4th Cir. 1996) (quotation omitted).

Moreover, when a movant supports its motion for summary judgment by affidavits, the adverse party may not rest upon the mere allegations or denials of its pleading, and the adverse party's response must be supported by affidavits or as otherwise provided by Rule 56 and must set forth specific facts showing that there is a genuine issue for trial. FED. R. CIV. P. 56(e). In the present case, Defendants have presented affidavits, deposition testimony, and other exhibits in support of their motions. In response, Collins has only provided a personal affidavit that largely reiterates the claims and legal conclusions of her complaint. This affidavit fails to provide any support for several of her claims, and she has made no attempt to rebut the legal arguments set forth in the Defendants' memorandums in support of summary judgment.

7

## ANALYSIS

**A. Collins's Title VII Claims[5]**

In Count One of her complaint, Collins alleges that CCI subjected Collins "to gender discrimination, harassment, constructive discharge and disparate treatment due to race in the terms and conditions of her employment in violation of Title VII of the Civil Rights Act of 1964, and as amended in 1991, N.C.G.S. § 143-422.2, and 42 U.S.C. § 1983." In Count Two of her complaint, Collins contends that CCI is further liable for "retaliating against her for opposing practices made unlawful pursuant to Title VII . . . and USC [sic] § 1983."

The court notes at the outset that Collins has provided no evidence whatsoever to support her claim of discrimination on the basis of race. This claim is not even mentioned in her affidavit filed in opposition to summary judgment. Collins has likewise failed to support her allegations of unlawful retaliation. Therefore, summary judgment will be granted to CCI on these claims without further discussion. FED. R. CIV. P. 56(e). The court will now address Collins's remaining allegations of discrimination on the basis of her gender.

Collins first contends that CCI discriminated against her on the basis of her gender by subjecting her to "disparate treatment . . . in terms of the work conditions, privileges, [and] benefits." (Collins Aff. ¶ 7.) However, Collins has not supported this conclusory statement with the specific facts necessary to survive summary judgment. Nowhere in Collins's affidavit or elsewhere in the evidence before the court is there any indication that Collins was treated differently from other employees regarding working conditions, privileges, or benefits on the basis of her sex.

---

[5]These claims, as well as the claims for violations of N.C.G.S. § 143-422.2, discussed infra, have already been dismissed by the court as against Defendant Harwood in this court's Order Granting Partial Motion to Dismiss (Document #22), filed July 30, 2008.

Significantly, Collins has failed to provide the court with any comparators or other evidence to bolster her claim of disparate treatment. In short, Collins has failed to show any evidence adequate to create an inference of illegal discrimination. Without this crucial evidence, her claims for disparate treatment must fail. See O'Connor v. Consol. Coin Caterers Corp., 517 U.S. 308, 312 (1996).

Even more fundamentally, Collins's failure to identify any adverse employment action taken against her by CCI is separately fatal to any claim of gender discrimination other than a claim for maintaining a hostile work environment. See Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 (4th Cir. 2001) (recognizing that a hostile work environment claim "typically encompasses [discriminatory] conduct outside the realm of tangible employment actions"). Although Collins avers that "she was denied promotions and salary increases by Defendant Harwood so that Defendant Harwood could continue his unlawful behavior towards [her]," (Collins Aff. ¶ 22), Collins admits that this statement is made not based on her personal knowledge but only "[u]pon information and belief." Collins also avers that she asked to transfer jobs but was denied, but Collins provides no evidence that this denial was based on her gender.[6] At this stage in the litigation, Collins is obligated to support her allegations with specific facts. She cannot rely on personal speculation to survive summary judgment. Yarnevic, 102 F.3d at 757. Because Collins has failed to provide even a scintilla of evidence to corroborate her claims of either adverse

---

[6] In fact, the record shows that Collins's requests to transfer occurred more than two years before the allegedly harassing behavior of Defendant Harwood began. (Collins Dep. at 55-61, 128; Green Declaration ¶ 22.) Although Collins at one point stated that she subsequently requested a transfer directly from Harwood, Harwood did not have the authority to grant this request. Instead, written applications for transfers were required to be directed to CCI's hiring managers, who considered an employee's transfer request without regard for the opinion of the employee's supervisor. (Green Declaration ¶ 21.) Thus, Harwood was not in a position to discriminate against Collins by denying her a job transfer.

employment actions motivated by a discriminatory animus or unlawful retaliation, summary judgment will be granted to CCI on these claims.

Lacking any evidence of adverse employment actions, Collins and her case must finally retreat within the dubious redoubt of Collins's hostile work environment claim. However, this claim also fails because the undisputed facts show that CCI has established the Faragher / Ellerth affirmative defense.

The Faragher / Ellerth affirmative defense derives from the two eponymous Supreme Court cases of Faragher v. City of Boca Raton, 524 U.S. 775 (1998) and Burlington Indus., Inc. v. Ellerth, 524 U.S. 742 (1998). The defense is available where, as here, a plaintiff-employee can show no evidence of an adverse employment action. Once this preliminary requirement is met, the defendant-company must prove two more things to avail itself of the Faragher / Ellerth defense. First, the company must prove that it "exercised reasonable care in preventing and promptly correcting any sexually harassing behavior." Barrett v. Applied Radiant Energy Corp., 240 F.3d 262, 265 (4th Cir. 2001) (citing Faragher and Ellerth). Then, the company must show that "the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Id. at 266 (quoting Faragher, 524 U.S. at 807; Ellerth, 524 U.S. at 765).

In the instant case, there is no dispute that CCI had a Non-Harassment policy in place at the time of the alleged discrimination, that CCI distributed this policy to its employees, that Collins had received a copy of the discrimination policy, and that Collins had signed an acknowledgment agreeing to familiarize herself with the policy's contents. Fourth Circuit case law is unequivocal that these facts satisfy a defendant's burden to demonstrate that it exercised reasonable care to prevent harassment. As that court has stated:

> Distribution of an anti-harassment policy provides compelling proof that the company exercised reasonable care in preventing and promptly correcting sexual harassment. The only way to rebut this proof is to show that the employer adopted or administered an anti-harassment policy in bad faith or that the policy was otherwise defective or dysfunctional.

Id. (quotations and citations omitted). Collins has presented no evidence and made no argument to support a finding that CCI's Non-Harassment policy was adopted in bad faith or was otherwise defective. As a result, this court finds that CCI's policy satisfies the first element of the Faragher / Ellerth affirmative defense.

Turning to the second element, the court finds that CCI has met its burden on this issue as well because Collins unreasonably failed to utilize the corrective procedures of CCI's Non-Harassment policy. Collins did not notify anyone at CCI of Harwood's alleged harassment until after she quit her job. Although Collins claims in her affidavit that she reported Harwood's harassment to Wedrychowicz, this statement is belied by her earlier deposition testimony, which shows that her complaints were not related to sexual harassment and were not specific enough to put Wedrychowicz on notice of any harassing behavior. "[A] party cannot create a genuine issue of fact sufficient to survive summary judgment simply by contradicting . . . her own previous sworn statement (by, say, filing a later affidavit that flatly contradicts that party's earlier sworn deposition) without explaining the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806 (1999) (citing cases). Because Collins has not explained the disparity in her testimony in this case, she is bound by the earlier statements in her deposition.

Collins also made a general complaint to a lead person at the factory about her unhappiness with the existing working conditions. However, like the statements made to Wedrychowicz, nothing Collins said when making this complaint would have alerted the lead person to Collins's belief that she was the subject of sexual harassment. Furthermore, the lead person was not the proper authority

11

to alert to allegations of sexual harassment under the Non-Harassment policy, and the policy itself made this fact clear. Instead, Collins should have reported any sexually harassing behavior to her supervisor, his supervisor, or anyone else in a position of authority within the company. This Collins did not do, and as a result the court finds that she unreasonably failed to avail herself of the corrective opportunities provided by CCI. Additionally, Collins failed to take advantage of CCI's offer to resume her job after Harwood was removed from his position as supervisor.

Thus, CCI has satisfied both parts of the Faragher / Ellerth defense and is entitled to summary judgment in its favor on these claims.

### B. Alleged violations of N.C.G.S. § 143-422.2

Collins complaint also alleges in Counts One and Three that CCI's actions violated N.C.G.S. § 143-422.2, the North Carolina Equal Employment Practices Act ("EEPA"). As a basis for this claim, Collins repeats her accusations of disparate treatment, harassment, constructive discharge, and wrongful termination due to her sex. Each of these claims lacks merit.

First, Collins cannot prevail on a charge of wrongful termination since she was not fired by Defendants. As to the other allegations ostensibly supporting her claim under the EEPA, the court notes that it is doubtful that the EEPA provides a remedy for harassment that does not result in a wrongful termination. See Smith v. First Union Nat'l Bank, 202 F.3d 234, (4th Cir. 2000) (so holding); see also Townsend v. Shook, 323 Fed. Appx. 245, 251 (4th Cir. 2009) (unpublished) (distinguishing cases where a discharge has occurred from cases of sexual harassment that did not result in a firing). However, the court need not fully address this issue because the court has already concluded that Collins failed to provide sufficient evidence to support identical allegations made in the context of her Title VII claims. For this reason, Collins's claims under the EEPA, which are predicated on the same alleged conduct of the Defendants as her claims made pursuant to Title VII,

must similarly collapse due to their factual infirmities. See N.C. Dept. of Corr. v. Gibson, 308 N.C. 131, 141 (1983) (explicitly adopting "principals of law" and "standards" from Title VII jurisprudence and applying them to a claim brought under the EEPA); Cox v. Indian Head Indus., 187 F.R.D. 531 (W.D.N.C. 1999). Thus, summary judgment will be granted to Defendant CCI on these claims as well.

### C. Alleged violations of 18 U.S.C. § 1983

Collins further alleges in Counts One and Two of her complaint that Defendants' allegedly discriminatory actions violated 18 U.S.C. § 1983. However, "[l]iability under section 1983 only extends to persons acting under color of law, a requirement equivalent to that of state action under the Fourteenth Amendment. Thus, conduct allegedly causing the deprivation of a federal right is only actionable under section 1983 when the conduct is fairly attributable to the state." United Auto Workers v. Gaston Festivals, Inc., 43 F.3d 902, 906 (4th Cir. 1995). Here, Defendants are both private actors. Collins has failed to provide any evidence that either Defendant was acting under color of state law or that Defendants' actions were otherwise attributable to any state or government. Therefore, summary judgment will be granted in favor of Defendants on these claims. See also Hughes v. Bedsole, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995) (holding that § 1983 actions are barred when a plaintiff could have brought a claim under Title VII).

### D. Claims for Intentional and Negligent Infliction of Emotional Distress

Collins seeks damages for Intentional and Negligent Infliction of Emotional Distress in Counts Four and Five of her complaint. To succeed under either theory, Collins must show that she did in fact suffer from severe emotional distress. Waddle v. Sparks, 331 N.C. 73, 82 (1992) (listing elements of intentional infliction of emotional distress); Robblee v. Budd Servs., Inc., 136 N.C. App. 793, 795 (2000) (enumerating elements of negligent infliction of emotional distress). The standard

is the same for both causes of action. Waddle, 331 N.C. at 83. Because Collins is unable to meet this high hurdle, summary judgment will be granted in favor of Defendants on both counts.[7]

Severe emotional distress requires a plaintiff to "show she was suffering from emotional distress of a <u>very</u> serious kind." Id. (quotation omitted) (emphasis in original). "Mere fright or temporary anxiety" do not qualify as severe emotional distress. Johnson v. Ruark Obstetrics & Gynecology Assocs., P.A., 327 N.C. 283, 304 (1990). As the North Carolina Supreme Court has stated elsewhere:

> The rough edges of our society are still in need of a good deal of filing down . . . plaintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind. There is no occasion for the law to intervene in every case where someone's feelings are hurt.

Waddle, 331 N.C. at 84 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)).

To prevent litigation over lesser anxieties and hurt feelings, "[t]he law intervenes only where the distress inflicted is so severe that no reasonable man could be expected to endure it." Pacheco v. Rogers & Breece, Inc., 157 N.C. App. 445, 449 (2003) (quoting Waddle, 331 N.C. at 84). To establish this type of severe mental distress, a plaintiff must show that the defendant's actions have caused her to suffer from an "emotional or mental disorder, such as . . . neurosis, psychosis, chronic depression, phobia, or any other type of severe or disabling mental condition which may be generally recognized and diagnosed by professionals trained to do so." Johnson, 327 N.C. at 304.

In Waddle, the North Carolina Supreme Court definitively recognized the tort of intentional infliction of emotional distress for the first time, but the court nevertheless held that the plaintiff in

---

[7]The court is also doubtful that Harwood's alleged behavior was extreme and outrageous enough to support a finding of intentional infliction of emotional distress, but the court need not definitively resolve this issue.

that case had failed to establish the kind of severe emotional distress that would entitle her to relief. In that case, the plaintiff claimed that her supervisor at work brushed against her breasts, frequently used vulgar and obscene language, and had directed several sexually suggestive remarks at the plaintiff. Waddle, 331 N.C. at 78-81. However, none of this conduct had driven plaintiff to see a psychiatrist, and although plaintiff had taken "nerve pills" during the relevant time period, the court found that her use of these pills was more closely tied to family problems than to stress at work. Id. at 85. After examining all of this evidence, the court in Waddle concluded that the plaintiff had provided insufficient "medical documentation" of "severe and disabling psychological problems" in order to survive the defendant's motion for summary judgment. Id.

The facts of the present case are analogous to the facts in Waddle. First, the allegedly extreme and outrageous conduct of the supervisors in both cases is nearly identical. More importantly, like the plaintiff in Waddle, Collins has failed to provide sufficient medical documentation of severe and disabling psychological problems in order to adequately substantiate her claim of emotional distress. Although Collins did take anti-depressants, like the plaintiff's use of "nerve pills" in Waddle, Collins's use was largely unrelated to her situation at work. For instance, Collins's use of these pills pre-dated the allegedly improper behavior of Harwood. In addition, during the time when the allegedly extreme and outrageous behavior was occurring, Collins reported to her doctor that "she ha[d] been doing well" and that she felt "much better physically and emotionally." (Collins Dep. 326-27.) Like the plaintiff in Waddle, any mental health problems experienced by Collins were not severe enough to support a cause of action for either intentional or negligent infliction of emotional distress, nor was any emotional distress experienced by Collins correlated closely enough with her experiences at work to warrant relief. For these reasons, summary judgment will be granted in favor of Defendants on Collins's claims of negligent

15

and intentional infliction of emotional distress.

### E. Negligent Retention and Supervision

In her complaint, Collins alleges that CCI was negligent in failing to supervise and in retaining Harwood. Since filing her complaint, Collins has done nothing to substantiate these claims. No evidence of negligence on the part of CCI has been put forward by Collins. Her affidavit does not address these claims at all and does not provide any evidentiary support for them. As a result, summary judgment will be granted to CCI as to this final count. FED. R. CIV. P. 56(e).

## CONCLUSION

**WHEREFORE,** for the foregoing reasons, summary judgment is **GRANTED** in favor of Defendants Harwood and CCI on all remaining counts in this case.

Signed: March 31, 2010

Richard L. Voorhees
United States District Judge